UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SIDNEY BYINGTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 07-CV-113-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff, Sidney Byington, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's November 3, 2003 application for Supplemental Security Income benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held June 15, 2006. By decision dated September 22, 2006, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on January 24, 2007. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 49 years old at the time of the hearing. [R. 443]. He claims to have been unable to work since September 4, 2000, due to a gunshot wound to the abdomen causing the need to constantly use the bathroom, fatigue, diminished lung capacity and shortness of breath, enlarged heart, high blood pressure, borderline diabetes, 3/4 deafness and tinnitus in the left ear, sudden headaches, allergies, vertigo and dizziness, pain in the right toe and soles of the feet, stiffness in the left leg, "slumping" and weakness of the left shoulder, popping in the right shoulder, pain in the lumbar spine and depression and anxiety. [Plaintiff's testimony, R. 448 - 462]. The ALJ determined that Plaintiff has severe impairments consisting of problems with his back, neck, shoulder, leg, elbow, stomach, hearing, hands, hypertension, feet, vertigo, headaches, vision, heart, shortness of breath, diabetes mellitus, depression and anxiety and substance abuse [R.14 ]. He found that, despite these impairments, Plaintiff retains the residual functional capacity (RFC) to lift and/or carry 20 pounds, stand and/or walk 6 hours in an 8-hour workday at 1 hour intervals, sit 6 hours in an 8-hour workday at 1 hour intervals, occasionally climb, bend, stoop, squat, kneel, crouch, crawl, push and/or pull, operate foot controls, reach overhead and twist his torso; that he requires low noise, low light environments and should avoid heat extremes, rough, uneven surfaces, unprotected heights, fast and dangerous machinery and dust, fumes

and gases; that he can perform only simple, repetitive and routine tasks and is slightly limited in reference to contact with the general public, co-workers and supervisors. [R. 15]. The ALJ determined that, with this RFC, Plaintiff could not return to his past relevant work as a bus inspector, commercial groundskeeper and rental storage clerk. [R. 19]. Based upon the testimony of a vocational expert (VE), the ALJ found that there are other jobs in the economy in significant numbers that Plaintiff could perform with that RFC. [R. 19-20]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 20-21]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff's attorney, Debbra J. Gottschalk, has failed once again to comply with the Court's Scheduling Order [Dkt. 10] which requires that each alleged error be specifically identified and listed by number in Section II of the opening brief and that discussion of each error then be contained in separate subsections under Section III.[2]

---

[2] Failure by Ms. Gottschalk to follow the briefing requirements as set forth in the scheduling orders has been noted on several occasions by judges in this district, i.e.: Case No. 96-CV-1030-M [Dkt. 15]; Case No. 97-CV-621-EA [Dkt. 11]; Case No. 99-CV-976-J [Dkt. 25]; Case No. 02-CV-7-M [Dkt. 14]; Case No. 05-CV-15-FHM [Dkt. 37]. Ms. Gottschalk habitually recites her client's medical history and subjective complaints amongst intertwining but unrelated and scattered arguments. She offers vague descriptions of inadequacies in the ALJ's findings without framing the issues in such a manner that the Court can ascertain what specific errors she claims were committed and why those errors warrant reversal. The Court is not required to speculate on what a party is arguing or to craft the party's arguments for him. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (holding appellate argument insufficiently developed; declining to speculate on what evidence appellant claimed was ignored); *Eacret v. Barnhart*, 120 Fed.Appx. 264, 265-6, 2005 WL 40061 (10th Cir. 2005) (lack of organization and specificity is dangerous practice) (citing *Starnes v. Smith*, 37 F.3d 1455, 1456 (10th Cir. 1994) (reviewing merits despite appellant's failure to comply with rules for briefing; referring matter
(continued...)

These requirements assist the Court in understanding the parties' positions. Counsel is advised that future violations of these requirements may result in the Court striking the non-complying brief and/or imposing other sanctions.

To the credit of Commissioner's counsel, the blended arguments offered by Plaintiff have been translated into two allegations of error in the response brief filed in this case. [Dkt. 16]. While the discussion by Ms. Gottschalk in her reply brief [Dkt. 19] is still disjointed, it appears she accepts the Commissioner's interpretation of the issues she wishes the Court to address. Therefore, the Court reviews the record on the basis of those two allegations of error: 1) that the ALJ incorrectly weighed Plaintiff's credibility; and 2) that the ALJ did not properly consider the medical evidence. For the reasons discussed below, the Court affirms the decision of the Commissioner.

## Credibility Determination

The ALJ is "the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Credibility determinations are peculiarly the province of the finder of fact, and the Court will not upset such determinations when supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In making a credibility assessment, the ALJ should consider such factors as: "... the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and the relationship between

---

[2] (...continued)
for disciplinary proceedings against attorney)).

the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler*, 68 F.3d at 391.  The ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints and if he concludes those complaints are not credible, to explain why. *See id.*; *see also* Soc. Sec. Rule. 96-7p, 1996 WL 374186, at *4 (1996) (stating that credibility determinations cannot be based on "intangible or intuitive" reasons, but "must be grounded in the evidence and articulated in the determination or decision").  This process, however, "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this case, the ALJ examined the medical record and considered Plaintiff's daily activities, his testimony and his demeanor at the hearing and determined Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. [R. 15-18].  He explained in detail the reasons for this determination. Among the reasons given were citations to the medical and clinical findings that were inconsistent with the Plaintiff''s allegations.  Such inconsistencies are an appropriate basis for evaluating credibility. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996); *Kepler*, 68 F.3d at 391; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992).

Plaintiff claims he became disabled on September 4, 2000, the date he suffered a self-inflicted gunshot wound to the abdomen.  As the ALJ observed, the medical records reveal that surgery performed to repair the damage to Plaintiff's abdomen and intestines was successful and Plaintiff was cleared to return to normal activities after a week of light duty work on October 10, 2000. [R. 290, 292].  In his  disability application papers in

November 2003 [R. 116, 118] and during his testimony at the hearing [R. 448, 453-454] Plaintiff contends he has not been able to return to work because the damage to his intestines causes bowel incontinence so severe that he is in the bathroom 10 to 20 times a day. The medical evidence, however, does not provide support for those claims.

Medical records from the Indian Health Clinic on December 12, 2000, indicate Plaintiff sought treatment for folliculitis (inflammation of hair follicles) and pruritus (itching). [R. 398]. The history of his gunshot wound and hospitalization on 9/4/00 was noted but there were no complaints of residuals from that injury. *Id.* He was also seen on April 3, 2001 for neurodermatitis; again no complaints of bowel problems were recorded. [R. 2001].

On October 10, 2001, Plaintiff attempted suicide by turning on the gas in his house and laying down. [R. 354-384]. He was hospitalized at Grand Lake Mental Health Stabilization Center until October 17, 2001. [R. 384]. His admission records show he reported he was not working due to stomach problems and loss of bowel control at times caused by a 2000 gunshot wound. [R. 357, 361, 365]. His hospitalization records contain nurses' notes that reflect social interactions, meal times and 1 or 2 bathroom visits some nights but there were no notations of bowel incontinence or of excessive bathroom use. [R. 376-383]. There is no medical evidence in the record for 2002. In January 2003, Plaintiff complained of frequent urination and painful ejaculation at the Indian Health Clinic [R. 322] but he did not mention lack of bowel control.

On February 27, 2004, Plaintiff was examined by Angelo Dalessandro, D.O., on behalf of the Social Security Administration. [R. 332-336]. He told Dr. Dalessandro "that fecal incontinence can occur with coughing, sneezing, pushing or pulling." [R. 332]. Examination of Plaintiff's abdomen indicated tenderness on palpation, but no organomegaly

6

(abnormal organ enlargement), peristalsis was normal,[3] there were no abdominal bruits (swishing sounds) and inguinal (groin) nodes were absent. [R. 333].

Plaintiff did not mention bowel incontinence to the physicians at St. Francis Hospital when he was admitted for nondisplaced fractures of his left tibia (shin bone), fibula (calf bone) and elbow on August 29, 2005, incurred in a motor vehicle accident. [R. 404]. Upon examination on that date, the physicians reported no peritoneal signs, though the urinalysis showed the presence of red blood cells that were thought to be the result of the accident and which did not reappear in the repeat test at discharge. [R. 404-405]. During subsequent followup examinations by his treating physician, David E. Nonweiler, M.D., the history of a gunshot wound to the abdomen was noted but no bowel incontinence complaints were recorded. [R. 417-420]. On May 31, 2006, still without any mention of bowel problems, Dr. Nonweiler discharged Plaintiff to return to work without restrictions. [R. 421].

Records from Robert S. Lawson, D.O., in April and May 2006, indicate Plaintiff complained of constant diarrhea and incontinence at his general physical examination. [R. 425]. Enteritis,[4] dyspnea (difficulty breathing), chest pain and "Historic abdominal gunshot wound" were listed as problems and a stool sample was collected for analysis. [R. 425-

---

[3] Peristalsis is a normal function of the body. It consists of a series of organized muscle contractions that occur throughout the digestive tract, also seen in the tubular organs that connect the kidneys to the bladder and is an automatic and important process that moves food through the digestive system and moves urine from the kidneys into the bladder. See MedlinePlus Medical Encyclopedia online at: http://www.nlm.nih.gov/medlineplus/ency/article/002282.htm

[4] Enteritis is inflammation of the small intestine, usually caused by eating or drinking substances contaminated with bacteria or viruses. The condition usually runs its course without treatment in a few days. See MedlinePlus Medical Encyclopedia online at: http://www.nlm.nih.gov/medlineplus/ency/article/001149.htm

434].]. At the May 16, 2006 followup to go over the test results, the EKG, blood lab work, and pulmonary function tests were discussed. [R. 424]. Plaintiff was diagnosed with hypertension (HTN) and chronic obstructive pulmonary disease (COPD) and prescribed Metaprotol and Atrovent. There was no mention of the stool test results or of continuing diarrhea or bowel incontinence. *Id.*

Thus, the medical evidence is insufficient to support Plaintiff's claims of bowel incontinence so severe that he is precluded from performing any gainful activity. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability)(citing *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L.Ed. 2d 119 (1987). The only evidence Plaintiff cites as support for his claim that he must go to the bathroom 20 times a day and that he cannot work because of this, is his testimony. Plaintiff claims that these statements "have a medical basis, i.e., the a shotgun blast to his gut left him with many holes in his digestive system." [sic] [Plaintiff's Opening Brief, Dkt. 14, p. 11]. However, as noted above, the medical evidence reflects that Plaintiff's gunshot wounds were repaired and that he was released to return to work by his surgeon. Although Plaintiff sometimes gave a history of bowel incontinence to his subsequent medical care providers, there are no clinical observations or diagnostic findings in the medical record to support Plaintiff's claims. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990) (claimant's testimony alone cannot establish a impairment). The ALJ reviewed the medical record and concluded that the record reflects Plaintiff's surgery was successful and that there is no indication he has

not fully recovered. [R. 18]. As pointed out by the Commissioner, this was one of the factors the ALJ properly considered in determining Plaintiff's credibility.

So too, are Plaintiff's daily activities among the factors that the ALJ is entitled to compare against Plaintiff's allegations of inability to perform work activities. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Plaintiff stated in his disability application materials that he performed household chores and engaged in interests such as watching television, reading and playing the guitar but that he spent "most of the time" in the bathroom. [R. 115, 117, 118]. The ALJ questioned Plaintiff at the hearing about these activities. [R. 463-467]. Plaintiff's attorney had ample opportunity to elaborate on the amount of time it takes Plaintiff to do the dishes, dust the furniture, sweep and mop the floor, vacuum the carpets, make the bed, do the laundry, cook, shop, watch television, read and to play the guitar if she thought that information was significant. [R. 463-473]. Even in her briefs filed in this Court, Plaintiff's attorney does not specify "how long it took [Plaintiff] to accomplish these tasks" or explain how the ALJ's determination would have been impacted had he solicited those details from Plaintiff during his testimony. [Dkt. 14, p. 10]. Contrary to Plaintiff's argument, there is no indication that the ability to perform everyday activities "automatically led" to the ALJ's determination that Plaintiff is not disabled. [Plaintiff's Opening Brief, Dkt. 14, p. 10]. The extent of Plaintiff's daily activities was not the sole basis for the ALJ's findings but was one of numerous factors the ALJ considered while weighing Plaintiff's credibility.

Basically, Plaintiff is dissatisfied with the weight given the evidence by the ALJ. Plaintiff essentially asks the Court to reweigh the evidence. This it cannot do. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995). The Court finds the ALJ identified the evidence

that led him to believe Plaintiff exaggerates his symptoms and that he adequately linked his findings to the evidence in the record.  Because the Court concludes that there is sufficient evidence in the record to support the ALJ's credibility findings and that the ALJ properly linked his credibility findings to the record, there is no reason to deviate from the general rule to accord deference to the ALJ's credibility determination, see *James v. Chater*, 96F.3d 1341, 1342 (10th Cir. 1996) (witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

### Medical Evidence

Plaintiff's complaint that the [ALJ] found the medical evidence regarding his psychological diagnoses could be ignored is equally unavailing. [Plaintiff's Opening Brief, Dkt. 14, p. 12].  The ALJ's decision contains a detailed and thorough summarization of the psychological examination conducted by Michael D. Morgan, Psy.D. [R. 16].  Dr. Morgan reported on Plaintiff's medical history from 2000 and his suicide attempt and 10 day hospitalization in a mental health treatment center in 2001[5] and noted Plaintiff was not prescribed medications or subsequent treatment. [R. 327].  After running a series of tests and interviewing Plaintiff, Dr. Morgan diagnosed: depressive disorder; posttraumatic stress disorder, chronic; alcohol dependence and amphetamine dependence with physiological dependence; cocaine dependence with physiological dependence, sustained full remission; and cannabis dependence. [R. 330].  The ALJ acknowledged this diagnosis, the GAF assessment and the doctor's prognosis and determined Plaintiff has severe mental impairments of depression, anxiety and substance abuse.  [R. 15].

---

[5] Taken from Plaintiff's history as occurring in 2002.

Contrary to Plaintiff's allegation, Plaintiff's history of psychological disorders "which was recognized by even the Agency's own expert" was not ignored by the ALJ. The ALJ found Plaintiff has severe mental impairments and assessed an RFC to accommodate limitations imposed by those impairments. Plaintiff's counsel takes umbrage at the Commissioner's suggestion that she failed to supply medical evidence to support a letter she submitted at the hearing from MaNia Hill, a case manager from Associated Centers for Therapy (ACT). In his written decision, the ALJ acknowledged the letter but determined it was not supported by treatment records and was therefore "not significant to the decision." [R. 18]. The ALJ noted that Plaintiff had not submitted supporting evidence from ACT and had not requested the ALJ's assistance in obtaining the records. [R. 18].[6] While the ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing, *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir.1996), in cases such as this one where the claimant was represented by counsel at the hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir.1997). From reading Plaintiff's briefs, it is impossible to ascertain what portions of the record Plaintiff claims the ALJ "decided to

---

[6] Ms. Gottschalk produced the letter from Ms. Hill at the commencement of the hearing on June 15, 2006. [R. 441]. She advised the ALJ that she did not need time to obtain and submit any additional evidence. *Id.* During Plaintiff's testimony, the ALJ questioned Plaintiff about Ms. Hill's role in his mental treatment and, after finding out Plaintiff had been going to ACT since March, he suggested to Ms. Gottschalk that there "[m]ight be some additional records there for you." [R. 462]. At the close of the hearing, the ALJ advised Ms. Gottschalk that he would hold the record open for fifteen days for her to submit additional evidence and that he would work with her, when told that she did not get much cooperation from ACT with regard to a mental status evaluation. [R. 488].

disagree with." Nothing in Ms. Hill's letter conflicts with or contradicts Dr. Morgan's assessment of Plaintiff's mental problems or the ALJ's findings regarding the limitations imposed by those mental impairments. In light of counsel's statement that she "did not feel the need to add records regarding the Plaintiff's psychological diagnosis" as the records from Grand Lake Mental Health and Dr. Morgan were consistent, the Court concludes the ALJ committed no error in weighing the mental medical evidence.

In an undeveloped argument Plaintiff's counsel cites to medical records from 1981, 1990, 1991, 1994, 1995 and Plaintiff's own testimony and contends that Plaintiff's impairments in combination meet or exceed a listing. [Plaintiff's [Reply] Brief, Dkt. 19, p. 5-6]. The ALJ concluded that Plaintiff has problems with his back, neck, shoulder, leg, elbow, stomach, hearing, hands, hypertension, feet, vertigo, headaches, vision, heart, shortness of breath, diabetes mellitus, depression and anxiety and substance abuse. [R. 14]. He noted, however, that the existence of these problems does not mean that Plaintiff is disabled. *Id.* The ALJ stated he had considered the entire record in determining that Plaintiff's impairments do not singly or jointly meet or equal Listings: 1.00, 2.00, 3.00, 4.00, 5.00, 9.00 and 12.00. *Id.* Plaintiff's counsel has not demonstrated where or how the medical evidence establishes that Plaintiff's impairments meet or equal the listings nor does she even identify any relevant listings. [R. 15]. Plaintiff has the burden of proof in a social security case through the first four steps of the evaluative sequence. *See Branum*, 385 F.3d at 1271; *Williams*, 844 F.2d at 750. Plaintiff has not met that burden here.

As the Commissioner points out, Plaintiff's reliance upon a 1996 report to contradict the ALJ's physical RFC assessment is misplaced. [Defendant's brief, Dkt. 16, p. 8-9]. Plaintiff worked until his gunshot injury in September 2000, despite the restrictions imposed

by the "court appointed specialist" in his January 22, 1996 evaluative report. [R. 229-230]. The ALJ found Plaintiff could not return to his past work because of his impairments. He based this finding upon the medical evidence pertaining to the impairments that Plaintiff claims prevented him from working after September 2000. *See Petree v. Astrue*, 2007 WL 4554293 at*7 (10th Cir. December 28, 2007) (unpublished) (most recent relevant medical evidence is appropriate for the ALJ to consider). The ALJ's decision demonstrates that he properly considered the medical evidence in this regard. Nothing in the record contradicts or overwhelms the ALJ's findings and there is sufficient evidence in the record to support the ALJ's determination. Therefore, the Court finds the ALJ's decision is supported by substantial evidence.

## Conclusion

The ALJ's decision demonstrates that he properly considered the medical evidence and all the other evidence in the record in his determination that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible. The record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 19th day of March, 2008.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE